Caledonia,
*March*,
1837.

JOHN P. DIXON *v.* EMERY OLMSTEAD.

If one escape from another State and be arrested here, in obedience to our statute. as a fugitive from justice, and contract with the party aggrieved for his release, such contract, while executory, is void, as against good policy.

Both parties are to be considered *in pari delicto*, and if the party accused pay money or other thing, to obtain his release, the law will not aid him in recovering it back again.

This was an action of trover for a horse. The facts in the case were, in short, that the defendant procured one *Blodget* to come from New-Hampshire, into the town of Barnet, in this State, after having procured a warrant to arrest the plaintiff in that State, on a charge of forgery, and here procured the warrant of two justices of the peace, for the arrest and surrender of plaintiff, to answer to the charge of forgery in the State of New-Hampshire. The plaintiff declared himself innocent of the alleged forgery, but, on conferring with defendant's agent, the matter was agreed to be settled, by plaintiff's paying defendant one hundred and fifty dollars, in part payment of which, the horse in controversy was delivered to defendant by plaintiff. Previous to this arrangement, the defendant's agent had threatened immediately to arrest plaintiff in the manner above set forth, and, as part of the settlement, the defendant promised not to prosecute the indictment for forgery. There was no evidence given of the forgery having been in fact committed by plaintiff, except as above stated, and the only evidence given to the jury of the existence of the warrant in New-Hampshire, or in this State, · was the evidence given by plaintiff of the declarations of defendants's agent, that he had procured such warrants to be issued, and had the latter then in his hands, and some one in readiness to serve it, if plaintiff should refuse to make the compromise. The court decided, that if the jury believed the evidence, the defendant was entitled to recover. To this decision of the court the plaintiff excepted, and exceptions were allowed and the case comes here for revision of that decision.

*Charles Davis, for plaintiff.*

The direction given to the jury in this case, by the county court, cannot be sustained by principle or authority. The position, that money or other thing, paid or delivered, in pursuance of an illegal contract, or in furtherance of some illegal or immoral purpose, in which both parties have a common participation,

must be left where they have placed it, and cannot be recovered by law, by one from the other, is too strongly fortified by adjudged cases to admit of doubt.  We have no disposition to call it in question.  But it has no application here.  If there was any thing against law in the transaction, which terminated in the delivery of the horse, for which this suit is brought, it was the wrong only of the defendant.  The parties were not in *pari delicto*.

.If Olmstead committed the offence of compounding a criminal prosecution, commenced for wicked gain's sake—obtained Dixon's horse by fraud or duress, or without valuable consideration—in either of these cases, the latter is entitled to recover.  In the two last cases, it will not be pretended that there could be *par delictum*.  It is only in the former that the defendant supposes the plaintiff concurred with him in the guilt of the transaction.  The defendant then is placed in the singular position, of desiring to aggravate his own enormity, in respect to the crime against the public, with the view of screening himself from responsibility in the civil suit by the party injured. We must not suffer him to affix any other character to it than such as it deserves.  Did Olmstead, or which would be the same thing, did Blodget, his agent, whose doings he authorized and sanctioned, commit an indictable offence against our laws, and if so, what offence, and how is it punishable ?

The only offence of this sort, known to the common law, is. that of compounding a felony, which consisted in causing a criminal prosecution for felony to be instituted, and then discontinuing it, upon the receipt or promise of a reward by the party prosecuted.  It was a misdemeanor merely, and punishable by fine and imprisonment.  It seems originally to have been confined to the case of receiving back one's goods or money, taken by theft or robbery, upon agreement not to prosecute, and with or without a reward for so doing.  Hence it receives the name of *theft-bote* in the old books.  1 Hale, P. C. 546, 619.   2 id. 400.   4 Bl. C. 133, 136.

Compounding a prosecution for a misdemeanor seems not to have been indictable, although it is so far regarded illegal, as to preclude a recovery on any contract, into which it entered as a consideration.  *Collins* v. *Blantern*, 2 Wilson, 341.  *Edgecomb* v. *Rodd et al.* 5 East. 294.  *Badger* v. *Williams*, 1 D. Chip. Rep. 137.  2 Chit. Crim. Law, 220, 232.  *Howson* v. *Han-*

Caledonia,
*March,*
1837.

Dixon
*v.*
Olmstead.

*cock,* 8 T. R. 575. *Beeley* v. *Wingfield,* 11 East. 46. *Ba-ker* v. *Townsend,* 7 Taunt. 422.

If, however, as is most probable, the agreement is to be construed merely as an undertaking to forbear further proceedings in the process, the purpose of which was only to effect the transportation of Lixon from the state, where his domicil was, into another jurisdiction, there to be tried, we submit that it is very far from being such a promise not to prosecute, as all the authorities represent to be essential to the offence. The proceedings, so far as this state is concerned, are merely initiatory, designed to expatriate a citizen and to subject him to other laws. To institute them with a view of extorting money or other thing, upon forbearance, may be duress, extortion, obtaining money by false pretences, swindling, or whatever other name, but it cannot be the common law crime of compounding prosecutions.

This point does not rest upon argument merely; it has been settled by solemn judicial decision, in this very case—the county court, in an indictment against Blodget, having determined, on demurrer to the indictment, that the offence was not committed and could not be, in reference to proceedings instituted to remove one from this state into another, for trial there. For such a doctrine no warrant could be found in any books, English or American. It is enough to rest upon this determination, grounded, as it is, upon the soundest principles. But whenever the subject shall be again brought under the consideration of our courts, it may be admissible to push the inquiry a step further.

Persons aggrieved may and do move primarily in these prosecutions, giving information and aiding and assisting the prosecuting officers in bringing the guilty to punishment, but they are not permitted to wield this machinery to effect their own purposes. They can have no right, any more than other individuals, of controlling prosecutions. They could not, if they would, compound offences, without the concurrence of the public prosecutor. They may, it is true, by operating upon the fears of the weak and irresolute, extort money or other thing from them, under threats of prosecution, and this, we admit, would deserve severe reprehension. But the essence of the offence consists, not in permitting criminals to go unwhipt of justice, but in extorting, by such means, either from the guilty or innocent, their money. This is a common law offence or not, according to the

means made use of, in every respect as applicable to our situation and circumstances, as to those of England. 7 Dow. & Ry. 345. In that case, the respondents were convicted of conspiracy to extort money from the prosecutor, by offering to compound two indictments for keeping a gaming house, for a certain sum in money.

In the case of the *Queen* v. *Woodward et al.* 11 Mod. 137, it was determined, that extorting money and a note, under color and pretext of a warrant, alleged to have been issued by a justice of the peace, for perjury, was an indictable offence. There the party injured was in custody, at the time of the threats.

In *Rex* v. *Southerton*, 6 East, 126, the court decided, that to threaten one, not in custody, with a prosecution under a penal statute, with a view to extort money, is not indictable at common law, although it would be so under the statute of 18 Eliz. c. 5. See form of the indictment against *Woodward*, 3 Chit. Cr. Law, 842. *Rex* v. *Crisp*, 1 B. & A. 283. 6 Petersdorf, 25, 31. 1. Russell on Crimes, 136, 137. 10 Bing. 107.

The statute of 18 Eliz. c. 5, greatly extended the remedy by indictment, making it punishable by two hours exposure in the pillory, forfeiture of £10, and disability to sue on any penal statute, to compound any prosecution upon any penal statute. Dane says this statute has been substantially adopted in New York, and is common law in Massachusetts. In this State, it has not been adopted by statute, and it is presumed that no one will suppose that it makes a part of our common law.

As the crime which it was pretended Dixon had committed in New Hampshire, was not a forgery at common law, but merely a misdemeanor, punishable by fine and imprisonment, it follows that neither Olmstead nor Blodget could be subjected to punishment for instituting a prosecution for that offence in our courts, and then taking money or other thing for abandoning it; and, of course, the plaintiff could not be a *particeps criminis*, where no crime was committed.

But, whether this opinion be well founded or not, there is another view of the present case, which will lead to the same conclusion. There was no prosecution commenced, or even threatened in this State, which could be compounded.

The case, in fact, does not shew that any warrant had been prayed out in either State, and, consequently, none is shown to have been served ; it shows merely, that Blodget asserted that

he had one to convey plaintiff to the line, and that, unless the matter was settled to his satisfaction, it should be immediately handed to Kelley to be served. To prevent this, the plaintiff was induced to deliver his horse, some money and the notes, upon receipt of which Olmstead agreed to pursue the prosecution no farther.

Is this compounding a prosecution? If the agreement be understood to extend to a prosecution in New Hampshire, it will scarcely be pretended that this would constitute an offence indictable in Vermont.

The person, against whom a criminal prosecution is commenced or threatened, and who is induced to part with his money or other property to relieve himself from it, without reference to the question of guilt or innocence, is no where regarded as a *particeps criminis*, but is treated as peculiarly exposed to the designs of the compounder. There are no forms to be found for indictments against him at common law, nor do the elementary writers intimate that he can be indicted.

The statute of 18 Eliz. is levelled wholly against informers and plaintiffs, who shall compound or agree with those, " who shall offend or shall be surmised to offend," and attaches no penalty and imputes no guilt to the latter. See the statute 1 Bacon, 43, 2 Chit. Cr. Law, 220, 232. *Edgecomb* v. *Rodd & others*, 5 East, 294. *Clarke* v. *Shee & Johnson*, Cowp. 197.

In Cowp. 790, *Browning* v. *Morris*, it was determined that the insured, in a lottery transaction, may recover back the premium paid to the insurer of tickets, because the statute, 17 Geo. 3, c. 46, imposes the penalty wholly on the insurer and not on the insured. *Jaques* v. *Withy & Reid*,1 H. Bl. 65.

The case of *Smith* v. *Bromley*, 2 Doug. 696. n. decides, that money, paid by the friend of a bankrupt to a creditor, to sign his certificate, may be recovered back, under the statute of 5 Geo. 2 c.2, 4, prohibiting the taking of money under such circumstances. The objection that plaintiff was *particeps criminis* was insisted upon. *Jaques* v. *Golightly*, 2 Bl. R. 1073, is similar to that of *Browning* v. *Morris*. In *Holman* v. *Johnson*, Cowp. 341, Ld. Mansfield observes, that " the objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed ; but it is founded in general principles of policy, which

the defendant has the advantage of, contrary to real justice, as between him and the plaintiff, by accident, if I may so say."

We lay no stress on the case of *Lacoussade* v. *White*, 7 T. R. 531, where the plaintiff recovered £100, paid to defendant on an illegal bet, although there was no ground to distinguish between the parties, because it seems to be overruled by that of *Howson* v. *Hancock*, 8 T. R. 575, as also by *Lubbock et al.* v. *Potts*, 7 East. 449, which forbids the premium paid on an illegal insurance to be recovered back. In these and many other similar cases, the parties evidently stand upon the same footing, both volunteering to do some act prohibited by law, and hence the maxim applies, *potior est conditio defendentis*.

This rule of law is too well established to admit of doubt, but is not regarded by the courts with much force, for the reasons mentioned by Ld. Mansfield. It is, in fact, like another rule, equally well established, which, in case of a payment of a less sum than the debt due, directly made in money, will not give it the effect of full payment, though so intended and declared. by both parties. This rule is broken in upon on every occasion where a distinction can be made, which will let in the natural justice of the case. Hence, money deposited with a stake-holder, on an illegal wager, may be recovered back if not paid over, even after the event is determined against the plaintiff. *Aubert* v. *Walsh*, 3 Taunt. 277. *Cotton* v. *Thurland*, 5 T. R. 405. *Simmons* v. *Borlond*, 10 John. 469. *Allen* v. *Ehle*, 7 Cowen, 486. *Busk* v. *Walsh et al.* 4 Taunt. 290. *Mount & Wordell* v. *G. & R. Waite*, 7 John. 434, Kent's opinion.

And if paid into the hands of the opposite party, without the intervention of a stake-holder, the illegal contract may be rescinded at any time, while it remains executory and the deposit recovered back. *Tappenden* v. *Randall*, 2 B. & P. 467. *Lowry* v. *Bourdieu*, Doug. 468. *Williams* v. *Hedley*, 8 East. 378, where the true distinction is briefly but clearly enforced. See, also, *Taylor* v. *Lendy*, 9 East's. Rep. 49.

These cases are entirely decisive of the one at bar. In principle, it seems impossible to imagine any valid distinction.

*John Mattocks, for defendant.*

The simple question is whether the plaintiff, having paid property to the defendant to compound a felony, can recover it back. "When money has been paid by one of two parties to an

Caledon...
*March*
1837.

————

Dixon
v
Olmstead.

illegal contract, in a case where both parties may be considered as *participes criminis*, an action cannot be maintained, after the contract is executed, to recover the money back again, for *in pari delicto potior est conditio defendentis.*" Wheaton's Selwyn, 75—6, and the notes on the same pages, where many cases are cited and compared. When both parties are equally in fault, the defendant has the best of it, and that is precisely this case.

The opinion of the court was delivered by

REDFIELD, J.—The principles, applicable to cases of this character, are very well settled. The only difficulty here is in determining to which class of cases this belongs. If this is to be treated strictly as a compounding of felony, and, as such, an indictable offence, it is past all controversy that the plaintiff cannot recover. For both parties are to be considered *in pari delicto*, and the case will then be determined by the well known maxim, *potior est conditio defendentis*. It needs no laboured argument to show the doctrines upon this subject or the reasons, upon which they are founded. They are too familiar with the profession to require much comment.

Whenever a contract has for its object the contravention of the express provisions or prohibitions of some statute, or any other act or omission, which is against good morals and not allowable in the forum of conscience, or subversive of sound, wholesome policy in government, such contract, while it remains executory upon both parties, is of no binding force whatever, and both parties are, in contemplation of law, the same as if the contract had never been made. But if the contract had been executed on the one part, by the payment of the consideration of the corrupt agreement, and the other party refuses to perform his stipulations, no action can be maintained against him, either upon the contract or to recover back the consideration. These principles have been long established, and upon reasons of the soundest policy.

There are some few cases of exception to these general rules, by express statutory provisions, such as money lost at play, which may be recovered back again by the losing party, although he is admitted to be equally in fault with the other party.

This exception is one founded on a higher policy than the rule itself. There are other cases, in which the party paying his money is treated as the *oppressed* party, and is permitted to recover back money paid, on the ground of some supposed infir-

mity or some peculiar liability to outrage or extortion, from the circumstances in which he is placed at the time.

Thus, in the case of a usurious loan, the party, paying interest beyond the legal rate, is allowed to recover back the amount, as so much money extorted from him by a supposed duress of circumstances, although it must be admitted the money was paid voluntarily and in direct contravention of the express provisions of the statute. And in the same light are viewed illegal wagers, before the money is paid over to the winning party, also money paid for the illegal assurance of lottery tickets, and money paid to induce creditors to sign the commission, or to aid the bankrupt in obtaining his certificates. But these are all considered as excepted cases, on the ground of some superior policy in the rule excepting these cases from the general rule.

In many of the cases there is an express statutory exception, and others are so similar, as not to be distinguished from them.

But the present case is one which could not strictly have occurred at common law. It is not precisely a compounding of felony, and the indictment in the county court, charging the offence as such, was held insufficient, on the ground that no felony had been committed within our jurisdiction.—And still it cannot be admitted, that the transaction was an innocent one, on either side. Our legislature, previous to the provisions made by Congress on the subject, did provide for the surrender of fugitives from other States. This was to be made by the warrant of any two justices of the peace, of the county where the arrest should be made. It was under this statute the defendant was proceeding to bring the plaintiff to trial for an alleged felony, committed in the State of New Hampshire. For the purposes of this trial, it must be considered first, that the plaintiff was guilty of the offence. For if when he was threatened only with *legal* process, and the *ordinary* proceedings in such cases, he saw fit to come forward and compromise the matter, it is not in *his* mouth to deny his *guilt*. (And it was so held in *Swasey* v. *Mead & Chase*, Orleans Co. Sup. Ct. March T. 1832.) And again, if the plaintiff saw fit, as in this case, to give in evidence the declarations of defendant and his agent, that he had procured warrants in New Hampshire and in this State, to arrest the plaintiff on this charge, these declarations thereby became evidence, and as the verdict was directed, on the ground that the jury should believe all the evidence, it must be considered that such warrants had been taken out in the manner alleged.

Hence the plaintiff in this case is to be treated as a fugitive from justice, just about to be arrested, and surrendered in obedience to the laws of this State, for his trial in another jurisdiction. In this state of the case, the plaintiff pays money and other property to defendant, for the purpose, and with the agreement to compound and stifle this prosecution. It is not pretended that defendant threatened the plaintiff with any other than a legal and usual prosecution for the offence. And no man can be considered as under duress, when he is threatened, or indeed visited, by the ordinary modes of legal process, either in civil or criminal proceedings. Our legislature have seen fit to institute this mode of securing the surrender of fugitives from justice. The policy of such a law is very apparent. It is desirable, above all things, that the State should never prove a sanctuary for crime, a refuge for the guilty violators of just laws, either here or elsewhere. Such, undoubtedly, would be the case, if no provision for surrendering fugitives from justice existed. And where such laws do exist, it cannot be doubted that compounding a prosecution under them is indictable, as a high misdemeanor. And it is certainly difficult to see why the parties are not *in pari delicto.* An innocent man seldom wishes to prevent the ordinary course of justice. And whether the accused be innocent or guilty, it cannot be admitted, that any right whatever exists to counteract or resist the operation of the law.

Such contract could hardly be less *immoral,* nor could it be less against sound policy, than if there had been the compound of a felony committed here. The fact that the forgery is considered as committed within the territorial limits of another jurisdiction, and, of course, technically not against our law, does not, in any sense, justify the offender in *buying* off from a regular prosecution for the offence, nor justify the courts in giving countenance to the transaction, by aiding the party in recovering property, surrendered in furtherance of such an illegal contract.

Nor do we feel warranted in treating the plaintiff as the innocent victim of the defendant. Every man here knows his rights, and knows, and feels too, that those rights are held sacred, not only by our own tribunals, but equally in our sister States. If innocent, he has a right to expect an acquittal; if guilty, he may or may not be convicted, but in neither case can he feel warranted in *bribing* the first minister of justice, (as the party aggrieved

always will be,) not to institute, or to discontinue a prosecution already instituted.

We know, indeed, that an innocent man may, from want of firmness, or want of trust in the fairness of our tribunals, or the integrity of witnesses, or from horror at being suspected of crime, be induced to pay money, even perhaps to compound and stifle a prosecution. But, however innocent one may be of the offence charged, such an escape could not fail to involve the party in almost equal guilt with the actual offender. And we do not perceive any such constraint in the present case, as would be likely to enable persons to extort money at will from the innocent, although not unsuspected. What has been said has not been done with any intention to cast suspicion upon the character or conduct of any one, but from necessity to show the degree of guilt attaching to the plaintiff's conduct. And, at the same time, it is apparent the defendant does not escape through his own innocence, but because the plaintiff's hands are too corrupt to handle the price of guilt, which he must therefore lose, and which the defendant retains from necessity, and against the laws both of honor and good conscience.

The judgment of the county court is therefore affirmed.