BOWEN & McNAMEE *v.* ADDISON BUCK AND DAVID WARREN.

*Illegal consideration.*

A note is void which is given, either wholly or in part, for the purpose of procuring the suppression of a prosecution for an offence of a public nature, involving moral turpitude, and affecting the public morals and example.

A note is also void which is procured by a representation that such a prosecution has been commenced and an agreement to stop it, even if such representation was false if it was believed and acted upon by the opposite party.

Bowen et al. *v.* Buck et al.

If the pretended prosecution was for obtaining goods by false pretences from the payee of the note, it will make no difference, in this respect, as to its validity, that it was given only for the value of the goods obtained, and for only the amount of the debt justly due therefor from the person who obtained them.

ASSUMPSIT upon a promissory note. Plea, the general issue; trial by jury, March Term, 1855,—PECK, J., presiding.

The plaintiffs produced and gave in evidence the note declared upon, the execution of which was admitted. It appeared that Buck was principal in the note, and Warren, the other defendant, a surety only.

The defendants introduced evidence tending to show that on the occasion when the note was executed, the agent of the plaintiffs in taking the note, represented to the defendants that a criminal prosecution had been instituted in the state of New York against the defendant Buck for obtaining goods of the plaintiffs, for which the note was given, upon false pretences; that a requisition had been obtained from the governor of that state upon the governor of Vermont for his arrest, and that the latter authority had issued the proper warrant for his apprehension and delivery to the custody of the officers of New York; and that he, the agent, had then in his custody the papers necessary for that purpose, and should then arrest the said Buck thereon, and take him to New York, unless the defendants should execute the promissory note above mentioned; and that upon the said agent agreeing that the prosecution in the state of New York should be stopped and discharged the defendants executed the note; and were induced to do so by such representations and promise, and believing such representation to be true and relying on such promise; and that otherwise they should not have executed it. It appeared that the defendant Buck was indebted to the plaintiffs, at the time, to the full amount of the note, and that their agent, in consideration of said note, discharged said indebtedness. There was evidence tending to show that the plaintiffs received from the defendants nothing more than what was justly due them for said debt and lawful costs previously incurred thereon, either in said note or otherwise; and there was also some evidence tending to show that on the occasion of giving the note there was something paid besides the note over and above the debt and costs, for expenses, but that nothing but the debt and legal

costs was put into the note. The plaintiffs gave evidence tending to show that no criminal prosecution had ever been instituted against said Buck of the nature above mentioned; that their agent who transacted the business and procured the note, did not employ any menaces or representations as above mentioned, and testified to on the part of the defendants; and, that there was no undertaking on his part, that the prosecution above mentioned should be stopped or discharged. There was no evidence that Buck had ever committed the offense charged, except what is above stated.

The plaintiffs requested the court to instruct the jury that in order to sustain the defense the jury must find either that the plaintiffs received of the defendants more than was justly due to them from Buck, in consequence of the threats and representations of their agent, or that there was an actual prosecution pending at the time, and that the note in suit was given upon an *agreement* to stop or discharge it. They also requested the court to charge the jury that the plaintiffs had a right to stop a prosecution for obtaining goods of them upon false pretenses; or at least, that an agreement on their part to stop such a prosecution and settle it upon giving the note would not vitiate it, or render it void, if founded on a good consideration otherwise. The court declined so to charge; but did instruct the jury, among other things, that if they should find that the plaintiffs' agent made such representations as the defendants' evidence tended to prove,—and the defendants executed said note believing such representations to be true, and upon an agreement of the plaintiffs through their agent, that they would cause such criminal prosecution to be stopped and discharged, the note was void, and their verdict should be for the defendants;—but unless they so found, then their verdict should be for the plaintiffs; but if they did so find the defendants were entitled to recover, even though the jury should believe that no offence like that charged had been committed by Buck, and no criminal proceedings had ever been instituted against him for such an offence, and that the plaintiffs received, in said note and otherwise, no more than their due.

To this refusal to charge, and to the charge as given, the plaintiffs excepted; the jury having returned a verdict for the defendants.

*S. H. Hodges* for the plaintiffs.

I. The note declared on embraced no more than was due to the plaintiffs, and was founded on a good and sufficient consideration. It is not to be avoided because the agent of the plaintiffs, in order to induce the defendants to execute it, agreed to stop a prosecution which, in fact, had never been instituted.

The crime charged was a mere misdemeanor, in which the public were not concerned. Even in England, where the parties injured are relied on to prosecute, they may settle such offences on receiving amends. The sanction of a court is by no means demanded in all cases. It cannot be had, for instance, where the process of no court has been employed; *Johnson* v. *Ogilby*, 3 P. Wms. 277; *Draye* v. *Iberson*, 2 Esp. N. P. C. 643; *Fallowes* v. *Taylor*, 7 T. R. 475; *Beeley* v. *Wingfield*, 11 East. 46; *Baker* v. *Townsend*, 7 Taunt. 422; *Kirk* v. *Strickwood*, 4 B. & Ad. 421; *Goodell* v. *Lowndes*, 69 Q. B. 464, (6 Harr. Dig. 3;) *Rex* v. *Lord Falkland*, Kyd on Awards 64, (6 Ad. & El. N. S. 308;) *Elworthy* v. *Bird*, 2 Sim. & Stu. 372, (1 Cond. Ch. R. 502;) *Keir* v. *Leeman*, 6 Ad. & El. N. S. 308; *Crowell* v. *Gleason*, 1 Fairf. 325, (2 U. S. Dig. 5 4;)

Neither the plaintiffs nor their agent have taken a step to impede the course of public justice.

II. Neither can the note be set aside on the ground that it was obtained by *duress per minas.*

1. Buck was threatened with no proceedings but such as were in the due and ordinary course of law. Of these duress cannot be predicated; to allow it would be to impeach the administration of public justice. There was no attempt to extort anything which was not honestly due from him, or to otherwise abuse legal process; *Dixon* v. *Olmstead*, 9 Vt. 310; Vin. Ab. " Duress" B. 13, 29, 32 & 25; 2 Inst. 482, there cited; 1 Black Comm. 136, 137: *Williams* v. *Brown*, 3 B. & P. 68; *Eddy* v. *Herrin*, 17 Maine 338, (4 U. S. Dig. 68.)

2. Warren, though a surety, can take no advantage of any duress, to which his principal was subjected; Vin. Ab. " Duress" B. 4, 6, 7, 24, 26, 34; Bac. ab. " Duress;" *Huscombe* v. *Standing*, Cro. Jac. 157; *Thompson* v. *Lockwood*, 15 Johns. 256.

*W. H. Smith* and *Roberts & Chittenden* for the defendants.

The objection to a recovery upon the note, against either defendant is, that the consideration was, in part, illegal. In such case, the illegality in part avoids the whole; *Deering* v. *Chapman*, 9 Shepley, 488; *Hinesburgh* v. *Sumner* & al. 9 Vt. 23. The illegal consideration here was the agreement to compound a criminal prosecution.

No distinction is recognized in this country, (upon this point,) between compounding a felony and a misdemeanor; *Hinesburgh* v. *Sumner*, & al. 9 Vt. 23; 9 N. H. 197; 6 N. H. 225.

Whether or not Buck had been guilty of the offense pretended is unimportant. The illegality of the consideration, lies in agreeing to stay the prosecution therefor. His guilt, or innocence, could not be determined in an action upon this note; *Dixon* v. *Olmstead*, 9 Vt. 310.

Again, the plaintiffs are estopped from averring that there was no such prosecution, &c.

The consideration was vicious, upon the representations as made by the plaintiffs' agent. It is not for them to reply. "True, but we make it good, by showing that those representations were false." If they could so reply, there would still be this dilemma. If the plaintiffs' representations were true, the consideration was illegal; if false, the consideration was a deceit and fraud.


The opinion of the court was delivered by

REDFIELD, CH. J. The question in the present case is, whether, the plaintiffs' agent having induced the giving of the note in suit, by representing that a prosecution, for obtaining goods by false pretences, had been instituted in the State of New York, and the proper steps taken to arrest the defendant Buck, in this state, for the purpose of carrying him into New York for trial, and by agreeing to settle and stop the prosecution, the note is collectable, even if, in point of fact, the representations were false.

The plaintiffs' agent having obtained the note by these representations, and the plaintiffs now seeking to enforce the note, implicates the plaintiffs in these transactions of their agent. And having made the representations and induced the defendants to act upon

them, they would now be estopped from denying them, so that as to both parties probably, as is held in *Dixon* v. *Olmstead,* 9 Vt. 310, we may now regard as facts all the representations which were made and acted upon, and equally that the defendant is to be treated, as he chose to treat himself, as guilty.

In this view of the facts it is obvious, from the English cases referred to in the argument, and which are thoroughly reviewed in the late case of *Kier* v. *Leeman,* 6 Ad. & Ellis, N. S. 308, that they are not, perhaps, altogether reconcilable; or the principle, upon which they profess to go, easily to be discovered. But it is certain that the English statutes and the English practice, allow the party aggrieved far more control and agency in wielding criminal prosecutions for his own private advantage than has ever been allowed here. It seems to be supposed there, that in a certain class of inferior misdemeanors, the party aggrieved, and who has a private remedy for the same act, may use the criminal prosecution for the mere purpose of compelling a settlement of the private injury, and when the party is satisfied, the public prosecution is disposed of by a nominal fine. This has always been the English practice as to assaults and batteries, and it is obvious they have extended it to a class of misdemeanors affecting chiefly the interest of private persons, like nuisances; *Baker* v. *Townsend,* 7 Taunt. 422; *Elworthy* v. *Bird,* 1 Sim. & Stu. 372; *Beesly* v. *Wingfield,* 11 East. 46; *Draye* v. *Iberson,* 2 Esp. C. 643; *Fallowes* v. *Taylor,* 7 T. R. 475.

But in a class of cases quite numerous in the English books, it seems to have been considered that if the prosecution was one affecting public morals or example, it could not be controlled by a private party, for his own purposes. Of this character are the following: *Pool* v. *Bousfield,* 1 Camp. 55, which seems to have been a case of paying money to hush a prosecution for perjury in an affidavit; *Edgcomb* v. *Rodd,* 5 East. 294, was a prosecution for disturbing a religious meeting, and the court held it could not be compromised by the parties mainly affected; *Collins* v. *Blanton,* 2 Wilson, 341, 349, where it was held that a contract to withdraw a prosecution for perjury is founded on an unlawful consideration, and void; and in the principal case referred to, *Kier* v. *Leeman,* it was held that the "parties might compromise all offences, though

made the subject of a criminal prosecution, for which the injured party might sue and recover damages, but that in the present case the offence is not confined to personal injury, but is accompanied with riot and obstruction of a public officer in the execution of his duty. These are matters of public concern, and therefore not legally the subject of a compromise."

This is the latest English case on the subject which has been brought to our notice. The distinction here attempted, if we correctly apprehend the meaning of the learned judge, is between prosecutions for such acts as exclusively affect private persons, and involve no considerable proportion of moral turpitude, or any infamy of punishment, or personal disqualification, or seriously affect the public, that is between assaults and batteries, and nuisances, and offences of this grade, and such as involve the offender in infamous punishment, and personal disability, and extensively concern the public order and well-being. There is another distinction aimed at, but not well defined; it is that the class of crimes which the English law will not allow the injured party to compromise, are those which involve something entirely different from the mere act which constitutes a private injury. As theft, for instance, which always involves a trespass, or embezzlement, which involves a liability for the money or thing embezzled; but beyond all this there is involved a felonious purpose and intent, which constitutes the essence of the crime, and which seriously concerns the administration of public justice.

To apply these distinctions to the present case, it is obvious that the obtaining goods by false pretences, does involve an act for which a private action will lie, as was held by this court in *Poor* v. *Woodburn,* 25 Vt. 234. It is true, the party selling the goods under the alleged false pretences, is precluded from an action of tort, by insisting upon his securities taken upon the sale and attempting to enforce them, thereby affirming the sale. It is considered that he must, upon the earliest notice of the alleged fraud, abandon his securities and demand the goods, *Kingsford* v. *Merry,* 34 Eng. R. 607. If so, he may bring trover as in the case last cited, and in *Fitzsimmons* v. *Joslin,* 21 Vt. 129, but the party cannot hold on upon his contract for the price of the goods, and also sustain an action for the fraud, as the remedies are deemed in-

consistent; bu* there is something more than the mere conversion of the party's goods in this offence. There is involved fraud of a very dangerous character to public confidence, and in the punishment of which the public have a deep interest, and which, by the law of most commercial states, is attended, upon conviction, with infamous punishment and personal disability. At common law, this class of frauds was regarded as intimately related to, if not in fact, a part of the *crimen falsi*.

We think, therefore, that by the rules of the English common law, the use made of this prosecution for the public offence, to compel security for the price of the goods, renders the contract void as against the soundest principles of public policy. In regard to this class of offences, with us denominated high crimes and misdemeanors, under the revised statutes, it was long since decided by this court, that prosecutions after the offender was arrested and bound for his trial before the court having jurisdiction to try, must be by the public prosecuting officers; *State Treasurer* v. *Rice et al.* 11 Vt. 339. The important distinction between the mode of prosecuting offences in England and this country, is there pointed out, and commented upon by Williams, Ch. J., and in this state, there can be no question, we think, that the use made of this public accusation of crime has long been regarded as an abuse of public justice to private and sinister ends, which the law will not allow. The cases of *Sumner* v. *Hinesburgh*, 9 Vt. 23; and *Dixon* v. *Olmstead*, id. 310, seem to cover the important question involved in this case, and the case of *Shaw* v. *Spooner*, 9 N. H. 196, is almost identical with the present, and all these cases stand, as we think, upon ground that is altogether unassailable.

I question, very seriously, whether, in this state, a private person has any right to use any public or private prosecution for crime of any grade, for the purpose of inducing a settlement, security or payment of a private claim for private loss or injury. At all events it must be considered as well settled everywhere, that no such use can be made of a prosecution for a crime of the character here indicated.

The fact, that this note was given for the agreed price of the goods, is certainly not decisive. The party without the use made of the public prosecution, might not have been able to obtain secu-

rity for that amount, or any part of it. If so, he should not have resorted to this abuse of a public prosecution. It is not duress, but illegality which makes this contract ineffectual. This, of course, may be taken advantage of by all parties in defense.

Judgment affirmed.