# HOMER E. ROYCE *v.* M. J. MALONEY & H. M. GOFF.

## *Libel.* *Pleading.*

1. In a declaration based on a libel claimed to have charged the plaintiff, who was Chief Judge of the Supreme Court, with bribery in his office, it is not necessary to allege that the pretended briber was a party *of record* to any suits in which the plaintiff sat as judge or rendered any decision; but it is sufficient to allege that the said briber was a party *in interest* to such suits.

2. CONSTRUCTION OF PLEADING. Applying the rule, that everything is to be taken most strongly against the pleader, with reference to the rules relating to the degree of certainty required in pleading,—reading the words and phrases in the declaration in the light of the context, the court hold that there is an allegation of judicial action by the plaintiff in said suits.

3. ALLEGATION OF TIME. The time when the said briber had interests involved in litigation is properly alleged in accordance with the rule, that when several facts are stated in one continued sentence, time, though alleged but once, applies to each fact.

4. The publication was: "It is quietly going the rounds in St. Albans railroad circles that Chief Justice Royce will resign from the supreme bench during the summer, and that he and his son will form a law partnership, and will attend to the extensive law business of the Central Vermont R. R. Co. It has been suspected for years that Mr. Royce was retained by the railroad company aforesaid; therefore, this proposed open espousal of their cause will not occasion much surprise"; *Held,* (*a*) that it was not necessary to aver that the plaintiff was an attorney admitted to practice in the courts, in order to sustain the innuendo of bribery; (*b*) and that it is for the jury to determine, whether the words meant what it is alleged they did.

5. The second count was based on the following: "What the *Gazette* wants to know: when Judge Royce and his son will dissolve partnership"? It was alleged that the plaintiff's son was a lawyer, practicing in the courts, and that the meaning of said words was, that plaintiff was in copartnership with him in the law business, receiving compensation from parties to said suits, etc.; *Held,* that the publication in the light of prefatory averments amounts to a charge of misconduct in office, and is libelous, if not true.

ACTION for libel. Heard on general demurrer to the declaration, September Term, 1885, WALKER, J., presiding. Demurrer overruled, and declaration adjudged sufficient. The declaration alleged, that the plaintiff was an honest citizen, etc., of good name, etc.; that the plaintiff in the year 1870, and biennially since the year 1870, down to the time of the committing by the defendants of the sev-

eral grievances, was and has been by the legislature of the State of Vermont duly elected one of the judges of the Supreme Court of the State of Vermont, and has * * * been one of the judges of the Supreme Court of the State of Vermont and one of the chancellors of the Court of Chancery of the State of Vermont, and from the month of January, A. D. 1882, has been the Chief Judge of said Supreme Court; and during all said time from the year A. D. 1870, until the time of the committing of the several grievances by the said defendants * * * has exercised and discharged all the duties pertaining to said office of judge, chief judge, and chancellor, and during all said time the said plaintiff has discharged the duties of said office of judge, chief judge, and chancellor honestly, etc. * * * And the said plaintiff by virtue of his said office of judge and chancellor as aforesaid, has at all the sessions of the County Court and of the Court of Chancery within and for the county of Franklin aforesaid, and the county of Grand Isle, in the State of Vermont, presided and held said courts as presiding judge or chancellor thereof, and at very many sessions of the Supreme Court, in and for the various counties of the State of Vermont, has set and participated in the proceedings of said court as a judge of said court.

And the said plaintiff avers that during the greater part of or all the time from the year 1870 to the time of the committing of the several grievances by the said defendants as hereinafter mentioned, there has been a corporation chartered under and by virtue of the laws of Vermont and located at and having its principal place of business in St. Albans, in the county of Franklin aforesaid, called the Central Vermont Railroad Company, which corporation has operated an extensive line of railroad passing through said county of Franklin; and said Central Vermont Railroad Company has had large interests involved in litigation in various suits pending in the said courts, in which this plaintiff has presided as judge as aforesaid in Franklin County aforesaid and participated as judge of said Supreme Courts as aforesaid.

Yet the said defendants well knowing the premises but greatly envying, etc., to injure the said plaintiff in his said good name, etc., and to injure the said plaintiff in his said office of judge, chief judge, and chancellor, and to bring the

said plaintiff both as a private citizen and in his said office into public scandal, etc.,  *  *  *  to cause it to be suspected and believed by those neighbors and citizens that the said plaintiff had been and was guilty of the crime of bribery and of accepting bribes in his said office, etc., *  *  *  on the 5th day of June, A. D. 1884, at Richford, in the county of Franklin aforesaid, falsely, wickedly, and maliciously did compose, print, and publish, and cause and procure to be composed, printed, and published in a certain newspaper, then and there at said Richford, printed and published by the defendants and called the *Richford Gazette*, of and concerning the said plaintiff and of and concerning the said plaintiff as such judge and chancellor as aforesaid, a certain false, scandalous, malicious, and defamatory libel, containing the false, scandalous, malicious, defamatory, and libelous matter, following of and concerning the said plaintiff as such judge and chancellor, that is to say:   "It is quietly going the rounds in St. Albans railroad circles that Chief Justice Royce" (meaning said plaintiff) "will resign from the Supreme Bench" (meaning from the Supreme Court of Vermont) "during the summer," (meaning the summer of 1884) "and that he" (meaning the said plaintiff) "and his son" (meaning the son of the said plaintiff) "will form a law partnership and will attend to the extensive law business of the Central Vermont Railroad Company" (meaning the Central Vermont Railroad Company aforesaid).   "It has been suspected for years that Mr. Royce" (meaning the said plaintiff) "was retained by the railroad company" (meaning the Central Vermont Railroad Company aforesaid); "therefore, this proposed open espousal of their cause" (meaning said Central Vermont Railroad Company's cause) "will not occasion much surprise" meaning and intending by said language to charge and insinuate of and concerning the said plaintiff in his said office of judge and chancellor, that the plaintiff while being and discharging his, the said plaintiff's, duties as such judge and chancellor of said courts of the State of Vermont, and while so holding courts as aforesaid, and while so hearing, considering, and determining as such judge and chancellor causes pending in said courts as aforesaid, and before the said plaintiff as such judge and chancellor as aforesaid, in which causes the said Central Vermont Rail-

road Company was a party litigant, was retained, employed, and paid by said Central Vermont Railroad Company as its attorney, legal adviser, and counsellor in their said legal business, and in their litigation pending in said courts before the said plaintiff as such judge and chancellor as aforesaid. And further intending and meaning thereby to charge and insinuate that the said plaintiff in consideration of being so retained, employed, and paid as an attorney, legal adviser, and counsellor of said Central Vermont Railroad Company in said litigation while so acting and holding court as judge and chancellor as aforesaid and determining causes in which said Central Vermont Railroad Company was a party, the said plaintiff as such judge or chancellor would so adjudge and decide such causes as to favor the interests of said Central Vermont Railroad Company. And also meaning and intending by said words to charge the said plaintiff with the crime of bribery in his said office of judge and chancellor.

The second count alleged, after the prefatory averments contained in the first count, that the plaintiff has a son who is a lawyer, and has been for the last five years practicing his profession in said county of Franklin, etc., for profit; that plaintiff has never had any interest in the law business of his said son; that he has had no partnership relation with his said son; that defendant knowing the premises, to injure the plaintiff in said office * * * did at Richford aforesaid on the 10th day of April, A. D. 1884, unlawfully and maliciously, wickedly and scandalously compose, write, print, and publish, and did cause and procure to be composed, written, printed, and published in a certain public newspaper entitled the *Richford Gazette*, a certain false, etc., which said scandalous libel is in the words following, that is to say: " What the *Gazette*" (meaning the defendants) "wants to know": "when Judge Royce" (meaning the said plaintiff) "and his son" (meaning said Stephen E. Royce) "will dissolve partnership," thereby meaning and charging that the said plaintiff while holding the said office of judge and chancellor and while presiding as judge and chancellor in said courts was in copartnership with his said son, Stephen E. Royce, in the law business professionally done by the said Stephen E. Royce in and about causes pending in said courts, and that

the said plaintiff was receiving emoluments and compensation as counsel or solicitor from one of the parties to suits pending in said courts and at the same time as such judge or chancellor presiding in said courts in the trial of these same causes and hearing and deciding these same causes as such judge or chancellor, and that the plaintiff was corruptly accepting money or other emoluments and compensation from one of the parties to causes pending in said courts while the said plaintiff held the office of judge or chancellor of said courts, with the understanding that he, the said plaintiff, would be influenced thereby in his, the plaintiff's, official action in hearing, trying. and deciding the said causes or suits as judge or chancellor of the said courts.

*Wilson & Hall*, for the defendants.

The words set out are not actionable *per se.* If they can be made so, it must be on account of the facts set forth in the prefatory averments.

The declaration is defective, because there is no allegation that the Central Vermont Railroad Company had any cause or causes in court in which it was a party and in which the plaintiff sat as judge or chancellor or rendered any decision. The averment is " and said Central Vermont Railroad Company has had large interests involved in litigation in various suits pending," etc.

This averment falls short of an allegation, that said railroad company was a party to any suit or cause in Franklin County in which the plaintiff participated as judge.

A person or corporation may have an interest in suits or litigations in which they are not parties and about which they cannot be subjected to any cost or expense.

The declaration does not contain any averment as to the time when said railroad had any interests involved in litigation, and much less, that said railroad had any causes pending at the time of said publication or at the time when the plaintiff would resign his position on the bench.

There is no averment that the plaintiff at the time of said

publication or at any other time was an attorney-at-law, admitted to practice in the courts of this State.

It is a rule of law in actions for libel that it is not the office of an innuendo to enlarge or point the effect of the language used; and if a declaration cannot be sustained on the ground of the natural and common meaning of the language in its usual acceptation, or rendered significant by the previous averments of extraneous facts and the colloquia referring to them, it cannot be aided by inserting by way of innuendo the offensive meaning of the language. *Carter* v. *Andrews*, 16 Pick. 1; *Comm.* v. *Child*, 13 Pick. 198; *State* v. *Atkins*, 42 Vt. 253; *Ryan & Wife* v. *Madden*, 12 Vt. 51.

The extent of the meaning of the language is a suspicion, surmise, or imagination, that the plaintiff was retained by said railroad company; and even though the declaration were not defective in other respects, the language is not libelous. The language is not susceptible of even a suspicion that the plaintiff was guilty of bribery. *Tozer* v. *Mashford*, 6 Exch. 539; *Dickey* v. *Andrews*, 32 Vt. 55; Town. Sl. & Lib. 217.

The language charged in the second count has no tendency to expose the plaintiff to contempt.

Whether the language was capable of the construction given in the innuendo is a question for the court; and if not capable of such meaning, the jury should not be allowed to say whether the words published may have the meaning contended for by the plaintiff. *Dunnell* v. *Fiske*, 11 Met. 551; *Snyder* v. *Andrews*, 6 Barb. 43.

*Cross & Start*, for the plaintiff.

The words set forth in the first count are clearly libelous *per se*, when spoken of a judge who is holding court and deciding therein causes in which the Central Vermont Railroad Company is a party. The clear insinuation or charge is, as it would naturally be understood by parties entirely

ignorant of the facts who read the libel, that inasmuch as the judge, while deciding the causes of the railroad company in his court, was in fact their retained attorney, his proposed assumption openly of the relation would not occasion much surprise.

This clearly imputes to the plaintiff a violation of sec. 692 of the Revised Laws. It imputes to him gross misconduct as a judge, and such breach of the laws and misconduct in office as, if true, would subject him to impeachment before the senate, and conviction and punishment.

The words also clearly impute a charge that the plaintiff, by reason of such retainer, had or would adjudge causes in which the railroad companies were parties, heard before him, so as to favor the interests of the railroad company. What other imputation can be predicated upon a charge that a judge, who is trying and deciding a case in court, was already retained by one of the parties to the cause, in their extensive law business? A retainer by a lawyer implies that he will specially represent and care for the interest of his client in the litigation. The law imposes on him an obligation to exercise extraordinary care in his interest. The saying of a judge that he is retained by one party in a case heard before him, implies a charge that he will favor such party by reason of the retainer.

The words set forth in the second count, when spoken of a judge holding a court and deciding therein causes, in which causes his son, an attorney-at-law, is acting as attorney for some of the parties, is equally libelous *per se*. The clear imputation is, that a partnership exists between the plaintiff and his son in the business of practicing law, conducted by said son before the courts held by the plaintiff, for which business compensation is received from parties having cases in said court, decided by the plaintiff as judge, for the benefit of such partnership. And the libel asks: " When Judge Royce and his son will dissolve such partnership? "

The necessary imputation is, that the plaintiff was deciding cases, as judge, in which he, as partner of his son, appeared in fact as attorney, in violation of sec. 692; that he shared in the emolument as partner in the business conducted by his son in the court, while acting and deciding the same as judge, which is gross misconduct in office, if true, .subjecting him to impeachment and punishment; and that being so retained in such cases heard before him as judge, and receiving compensation therefor, he was guilty of corruptly accepting and receiving such compensation, with the understanding that he should be influenced thereby in his official action in deciding said causes as judge, and punishable under R. L. s. 4269.

In order for a judge to be guilty of bribery he must only accept a gratuity from some one, no matter who, nor whether he has a case in court or not, with the understanding that he will be influenced thereby in some official act. It makes no difference how he receives it, nor when, nor what official act is to be influenced. It is not even necessary that he perform any official act. He may be guilty of bribery if he is in a position to perform an official act, and corruptly accepts a gratuity with the understanding that he will or will not do it.

The opinion of the court was delivered by

ROWELL, J. The first objection to the first count is, that it does not allege that The Central Vermont Railroad Company had any cause or causes in which it was a party and in which the plaintiff sat as judge or chancellor or rendered any decision. It is true that there is no sufficient allegation that said company was a party *of record* to any of the suits alleged to have been pending; but such an allegation is not necessary. It is enough that said company was a party *in interest* to said suits, and that is virtually alleged. It is somewhat doubtful whether there is an allegation that plaintiff ever acted in a judicial capacity in any of said

suits, which, perhaps, is necessary in order to warrant a portion of the innuendo at least. In the construction of pleadings, the rule that everything is to be taken most strongly against the pleader, must be applied with reference to the rules relating to the degree of certainty and precision required in pleading, one of which is, that a pleading is not objectionable as ambiguous or obscure if it be clear enough according to reasonable intendment and construction, though not worded with absolute precision. Again, the meaning of words and phrases very frequently depends upon the context, of which *Spyer* v. *Thelwell,* 2 C. M. & R. 692, and *Deriemer* v. *Fenna,* 7 M. & W. 441, are illustrations. And in *Rex* v. *Stevens,* 5 East, 244, 257, Lord ELLENBOROUGH said, that when matter is capable of different meanings, it does not appear to clash with any rule of construction, applied even to criminal proceedings, to construe it in the sense in which the pleader must be understood to have used it, supposing him to have intended his pleading to be consistent with itself.

Applying these rules, we think there is an allegation of judicial action by the plaintiff in the suits named. The count alleges the successive elections of the plaintiff as judge since 1870, and that he has presided at all the sessions of the County Court and the Court of Chancery in the counties of Franklin and Grand Isle, and sat many times in the Supreme Court and participated in the proceedings thereof. It then goes on to allege the existence of The Central Vermont Railroad Company, its location and business, and then proceeds as follows: "And said Central Vermont Railroad Company has had large interests involved in litigation in various suits pending in the said courts, in which this plaintiff has presided as judge as aforesaid in Franklin County aforesaid, and participated as judge of said Supreme Courts as aforesaid." We think the preposition "in" before the word "which," links that relative to the word "suits" rather than to the word "courts," thus making the allega-

tion mean as though it read, " *in which suits*," or, " *in the trial of which suits*, this plaintiff has presided," etc., " and participated," etc. This construction has reference to the context, and gives force and congruity to all the language quoted; while if we treat "in" as linking "which" to "courts," what follows adds nothing, but is mere tautology, as the entire sense would be clearly expressed in the words, " said courts." And besides, we should have incongruity of language, being then compelled to read, " in which courts [meaning all the courts above mentioned] this plaintiff * * * has participated as judge of said Supreme Courts as aforesaid."

The second objection to said count is, that no time is alleged when said company had interests involved in litigation, etc. The want of such an allegation is probably but matter of form, helped by the statute unless assigned as special cause of demurrer. *Higgins* v. *Highfield*, 13 East, 407; Steph. Pl. 265. But in the preceding part of the sentence of which the allegation quoted is the last member, it is alleged that " during the greater part or all of the time from the year 1870 to the time of the committing of the said several grievances by the said defendants," etc., there existed a corporation called The Central Vermont Railroad Company, located at, etc., and operating an extensive line of railroad, etc., and then comes the allegation quoted, which is connected with the preceding part of the sentence by the conjunction "and," thus making the time previously alleged apply to the facts stated in the latter part of the sentence, according to the rule, that when several facts are stated in one continuous sentence or in several sentences connected by the conjunction *and*, time, though alleged but once, applies to every fact. *Taylor* v. *Welsted*, Cro. Jac. 443; 1 Chit. Pl. 258.

The next objection to said count is, that it contains no averment that at the time of the publication complained of the plaintiff was an attorney-at-law, admitted to practice in the courts of this State. Such an averment is of course un-

necessary to sustain the innuendo of bribery, and is equally so to sustain that of judicial action by the plaintiff in the company's causes in which he had been retained, for such action in such causes would be gross misconduct on plaintiff's part, and just as much prohibited by statute as though he was a lawyer admitted to practice. Although the statute did not formerly as now in terms prohibit a justice from acting as such in cases in which he had acted as counsel, yet in *Freelove* v. *Smith*, 9 Vt. 180, a consideration of the consequences that might follow from countenancing such a proceeding, impelled the court to hold as within the spirit of the statute that a grand juror, not shown by the case to have been a lawyer, who acted both as grand juror and counsel in prosecuting an offense before a justice, was incompetent to try a civil action brought to obtain redress for the supposed criminal act.

The only other objection to said count is, that the language of the publication imports at most only a mere *suspicion* of a retainer, and so is not libelous, and *Tozer* v. *Mashford*, 6 Exch. 539, is the main authority relied upon. But that was not a question of pleading, but of the correctness of the direction to the jury. The words were, "I have a suspicion that you and Bone have robbed my house, and therefore I take you into custody." The declaration alleged an intent to make an absolute charge of felony, and the court left it to the jury to say whether that was the intent or whether the imputation was of a mere *suspicion* of felony, and the jury found the latter. The direction was held right, and a motion for a rule *nisi* to set aside the verdict was refused. It is obvious that the question there made could not have been raised by demurrer, for the innuendo explained the meaning of the word "suspicion" to involve a positive charge of felony, and as it was legally susceptible of that meaning, it was for the jury to say in what sense it was in fact used. So here, the count alleges an intent to make a positive charge against the plaintiff, and the

language being susceptible of involving such a charge, it is for the jury to say what was meant in this behalf.

It is objected to the second count that the publication declared upon has no tendency to bring the plaintiff into contempt or ridicule, and so is not libelous *per se,* and is not made libelous by the prefatory averments. But we think the publication, in the light of the prefatory averments, amounts to a charge of misconduct in office, and so is libelous if not true.

The only other objection to this count is, that it does not allege that plaintiff was a lawyer, admitted and qualified to practice in the courts of this State. Such an allegation is not necessary. The false charge of such a partnership as the count alleges was meant, would be sufficiently virulent to make it libelous if the plaintiff was *not* a lawyer.

Judgment affirmed and cause remanded, with leave to defendants to replead on the usual terms.