### THOMAS MACK *vs.* P. A. CAMPEAU, et al.

#### May Term, 1897.

Present:  ROSS, C. J., TAFT, ROWELL, MUNSON, START and THOMPSON, JJ.

*Allegations Construed—Contract to Shield from Criminal Prosecution.*

The parties to a contract made for the purpose of saving one of them from
    a criminal prosecution cannot be heard to deny the fact of guilt, but
    must be treated as they have treated themselves.

The allegations of the bill are construed to mean that as the consideration
    of the contract sought to be enforced, the orator undertook to shield the
    defendant from prosecution for a crime of which the defendant was
    guilty; consequently the aid of the court is refused.

BILL IN CHANCERY.  Heard upon demurrer incorporated
in the answer, at the December Term, 1896, Addison
County, 1896.  *Tyler,* Chancellor, sustained the demurrer,
and dismissed the bill with costs to the defendants.  The
orator appealed.

The bill alleged that the orator had been for a long time
in the business of buying and selling coal in the city of
Vergennes, making therein a reasonable profit; that the
defendant, Campeau, was the pastor of the Roman Catholic
church in the same city and engaged in the coal business
which he conducted at such prices that the orator could not
compete with him; that Campeau had been accused by one

Egan of criminal intimacy with Egan's wife and alienating her affections; and that Egan was threatening legal proceedings against him, to recover damages, and to subject him to criminal prosecution; that Campeau, realizing his liability to such proceedings, and desiring to avoid the expense and damage of the same, and to save the exposure, punishment and scandal that would be incident thereto, besought the orator's services in that behalf, and in consideration that the orator would intercede and use his influence with the said Egan to dissuade him from instituting legal proceedings against Campeau upon said criminal relations,—and in further consideration that the orator would purchase Campeau's entire stock of coal,— he, Campeau, promised the orator that he would not thereafter engage in the coal business in Vergennes in competition with the orator; that the orator had performed upon his part but that Campeau was still competing with him in the coal business; and prayed for an injunction.

The defendant, Campeau, answered denying the principal allegations and insisting that the contract set forth in the bill was illegal and void as against public policy asking to have the same benefit thereof as if he had demurred to the bill for that cause.

*F. W. McGettrick* and *F. L. Fish* for the orator.

To avoid a contract on the ground that the consideration was an agreement to compromise a crime, it must appear that a crime had been committed. *Swope* v. *Jeff. Fire Insurance Co.*, 93 Pa. 251; *Malli* v. *Willett*, 57 Iowa 705; *Breathwit* v. *Rogers*, 32 Ark. 758. No such fact appears from this record.

*Roberts & Roberts* for the defendants.

Ross, C. J. (1) The orator contends that the demurrer should have been overruled because the bill does not in terms allege that the defendant, Campeau, had been guilty of criminal intimacy with the wife of Egan, and for that

reason, no crime is shown by the bill to have existed which could have been the subject of the negotiations between the orator and Campeau. The bill alleges that Egan had accused Campeau with having been criminally intimate with Egan's wife ; and that he had alienated her affections; that "Egan was threatening legal proceedings" against him "to recover damages," and "to subject" him "to criminal prosecution;" "that Campeau realizing his liability to such proceedings and desiring to avoid the damage and expense of the same, and to save the exposure, *punishment* and scandal that would be incident thereto, besought the orator for his services in that behalf." The bill further alleges that the orator entered upon the employment and did "intercede with, influence, persuade and induce Egan to forego and refrain from *prosecuting* or instituting legal proceedings against Campeau," on account of the alleged criminal relations.

Under the decisions of this State these allegations are a sufficient setting forth that Campeau had been guilty of the alleged criminal intimacy. By his employment of the orator to dissuade Egan from prosecuting or instituting legal proceedings against him on account of his alleged criminal relations with Egan's wife, he admitted that he was guilty of the crime charged. *Dixon* v. *Olmstead*, 9. Vt. 310; *Bowen* v. *Buck*, 28 Vt. 308. *Dixon* v. *Olmstead* is trover to recover for the conversion of a horse. To sustain the action these facts in substance were shown. The defendant residing in New Hampshire sent his agent into this State, who, after procuring a warrant for the plaintiff's arrest and surrender to the authorities of New Hampshire to be tried on an alleged charge of forgery committed in that State, induced the plaintiff, who denied the charge and declared himself innocent of it, to settle by giving the defendant the horse, among other things. No other evidence that a forgery had been committed by the plaintiff in New Hampshire was given. The defendant contended that the

alleged crime must be established, and that the horse had been given in settlement of the crime, to entitle the plaintiff to recover.   But the court said: "For the purposes of this trial, it must be considered first, that the plaintiff was guilty of the offense.   For if when he was threatened only with *legal* process and the *ordinary* proceedings in such cases he saw fit to come forward and compromise the matter, it is not in *his* mouth to deny *his guilt.*"   *Bowen* v. *Buck,* follows the doctrine announced in *Dixon* v. *Olmstead,* and holds that the parties to such transactions are to be held and treated as they treat themselves; that if they enter upon negotiations and settlements in which they treat themselves as guilty of the alleged crime they will be so treated when those negotiations and settlements are brought under legal investigation.   Hence the bill alleges sufficient facts to have the court treat the transactions between the orator and Campeau as they treated them, as of and concerning criminal relations existing between Campeau and the wife of Egan.

 ·  (2)  The orator also contends that if Campeau had been guilty of having criminal relations with Egan's wife, Egan would have a valid claim against him growing out of those relations, and that Campeau could lawfully employ the orator to settle or adjust the claim of Egan growing out of the same.   The contention is sustainable, if the allegations of the bill do not fairly include in the orator's employment the prevention of a criminal prosecution to be set on foot by Egan   To support his contention the orator relies upon this allegation, "and in consideration that the orator should intercede and use his influence with Egan, to dissuade him from *instituting legal proceedings* against Campeau, based upon the afore-mentioned criminal relations," etc.   He contends that the only legal proceedings Egan could institute against Campeau growing out of such relations were those to recover private damages.   This construction possibly might be given to this allegation if it stood alone.

*36*

Yet it must be remembered that Egan might by complaint to the proper officer, be instrumental in commencing a criminal prosecution against Campeau. It was his duty as a citizen to make such complaint, if he had knowledge of the commission of the crime. But when this allegation is read in connection with that which immediately precedes, that Egan had threatened to subject Campeau to criminal prosecution, that Campeau desiring to save the exposure, *punishment*, and scandal that would be incident thereto, sought the orator's services *in that behalf*; and in connection with what follows, that the orator did induce Egan to refrain from *prosecuting* and instituting legal proceedings, it fairly imports that the orator was employed not only to prevent Egan from instituting a civil suit, but also to prevent him from causing to be commenced a criminal prosecution. The meaning of words and phrases in pleadings, very frequently depends upon the context. *Royce* v. *Maloney*, 58 Vt. 445. The language relied upon by the orator, "instituting legal proceedings," when read in connection with the context, fairly imports criminal, as well as civil proceedings. It is not contended that if part of the consideration for the agreement, which the orator asks to have enforced, was the suppression of criminal prosecution, equity will aid the orator in enforcing it.

> *The decree of the court of chancery, sustaining the demurrer and adjudging the bill insufficient, is affirmed and cause remanded.*